UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-81087-CIV-MARRA/JOHNSON

HUBERT MITCHELL,

    Plaintiff,

v.

BARNARD CONSTRUCTION COMPANY, INC.,

    Defendant.
_____/

## ORDER AND OPINION

THIS CAUSE came before the Court on Defendant Barnard Construction Company, Inc., ("Defendant" or "Barnard")'s Motion for Summary Judgment (DE 7), filed July 15, 2009. Plaintiff Hubert Mitchell ("Plaintiff" or "Mitchell") filed a response in opposition to the motion (DE 10) and Defendant filed a Reply (DE 13). The motion is fully briefed and ripe for review. The Court has reviewed the motion, response, and reply, the entire file in this case, and is otherwise duly advised in the premises.

## Background

Plaintiff, a former employee of Defendant, filed a one-count Complaint against Defendant for employment discrimination under 42 U.S.C. § 1981. (See Compl., DE 1). Plaintiff concedes he has not gathered enough evidence to overcome summary judgment on his claim of discrimination based upon his race. See DE 10, p. 1. Thus, at this stage of the litigation, Plaintiff is proceeding solely under his retaliation claim. Id.

1

**Material Facts**

The facts, as culled from affidavits, exhibits, depositions, answers, answers to interrogatories and reasonably inferred therefrom, for the purpose of these motions, are as follows:

1. Plaintiff, an African-American male, began employment with Defendant on June 21, 2007, as a heavy equipment operator. (Mitchell Depo. at 50-51, DE 7-2).

2. Plaintiff was hired by Lisa Tisdale, Defendant's human resources employee. Id.

3. When Plaintiff started working for Defendant, his supervisors were Ryan Todd and Jason Fuller. Id. at 57-58.

4. During Plaintiff's first few weeks on the job, none of his supervisors expressed dissatisfaction with his job performance. Id. at 60.

5. Defendant's Superindendent Corey Bache was pleased with Plaintiff's performance as a truck operator. (Bache Depo. at 7, DE 7-3).

6. On or about August 30, 2007, co-employee Jordan Leverich ("Leverich" a/k/a "Doyle") was operating a piece of equipment, and co-employee Demetrius Walker was in the passenger seat next to Leverich. (Mitchell Depo. at 67-68).

7. Plaintiff was in the piece of equipment directly in front of Leverich and Walker. Id. at 69.

8. While in the cab, Leverich told Walker to "follow that black monkey," ostensibly referring to Plaintiff. Id.

9. Upon hearing this statement, Walker called Plaintiff on his walkie-talkie and asked him to pull over. Id. at 70.

10. Walker then got into the cab with Plaintiff and told Plaintiff, "He [Leverich] called you a black monkey. He said 'follow that black monkey.' " Id.

11. Plaintiff does not know of another offensive racial comment made by Leverich during Plaintiff's employment with Defendant. Id. at 76.

12. Plaintiff promptly called his supervisor, Ryan Todd, to report the comment. Id. at 64.

13. After Plaintiff reported the comment to Todd, Todd telephoned Corey Bache to tell him what happened. (Bache Depo. at 32).

14. The same day Plaintiff complained to Todd about the comment, a meeting then occured, during which Todd, Bache, and Mike Fuller (Bache's boss) brought Leverich in to question Leverich about what had happened. Id. at 32, 23.

15. In the meeting, Leverich stated that he was not referring to African-Americans when he used the word "monkey." Id. at 25.

16. In the meeting, Leverich stated that he was training Walker. Leverich was taking a phone call when Walker asked him what he should do. Leverich told him to "[f]ollow the rest of the monkeys." Id. at 44.

17. In the meeting, Leverich was not reprimanded, but he was "verbally warned . . . to choose his words more appropriately." Id. at 23-24.

18. The day after the incident, Ryan Todd met with the entire crew during one of the morning safety meetings and told all the employees that they must respect each other, work together, and get along. (Mitchell Depo. at 76-77).

19. Plaintiff wanted to speak with human resources about the comment because Leverich had not been disciplined for making the comment. Id. at 77.

20. Bache was aware that Plaintiff wanted to make a formal complaint with human resources. (Bache Depo. at 33).

21. Ryan Todd and Jason Fuller prevented Plaintiff from going to human resources for two weeks. (Mitchell Depo. at 77).

22. First, Todd and Fuller told Plaintiff that Buck (Leverich's father-in-law) was going to handle the situation.  Then Todd and Fuller told Plaintiff that he would now have to make an appointment to go to human resources.  Then, when the appointment was made, Todd and Fuller told Plaintiff that Lisa Tisdale (the human resources manager) was taking a couple days off. (Mitchell Depo. at 76-78).  Plaintiff again tried to meet with Lisa Tisdale and made an appointment for October 10, 2007, but the appointment was cancelled because Tisdale was busy with the media. (Mitchell Depo. at 78).

23. On October 10, 2007, the day before Plaintiff's termination, Plaintiff approached Ruth Clements, Director of Land Acquisitions and Land Management Department of the South Florida Water Management District, in the parking lot of Defendant's construction site.  Plaintiff explained to her what had happened. Id. at 79, 81.  Clements handed Plaintiff her card, told Plaintiff to call, and Clements stated that John Dunnick, who would be meeting with Defendant's president the next day, would call Plaintiff. Id. at 80-81.

24. John Dunnick called Plaintiff and told him that Plaintiff would be meeting the next day with Defendant's president and they should get some closure to the incident. Id. at 80.

25. Plaintiff was fired the next morning before he had a chance to meet with the president. Id. at 80.

26. Prior to Plaintiff's termination, Corey Bache was informed by Lisa Tisdale that

Plaintiff had spoken with Ruth Clements, or someone at South Florida Water Management. (Bache Depo. at 38).

27. Right before Plaintiff's termination, Mike Fuller, Corey Bache, and Ryan Todd met to discuss Plaintiff. (Todd Dep. at 7-8).

28. During this meeting, Mike Fuller and Corey Bache made the decision to terminate Plaintiff. (Todd Dep. at 7).

29. At 7:00 a.m. on October 11, 2007, when Plaintiff arrived for the safety meeting, Corey Bache told Plaintiff that he would never get a chance to see the president of the company and to give him his hard hat, vest, and pass and leave the property.  (Mitchell Depo. at 87-88).

**Standard of Review**

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact that should be decided at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the non-moving party bears the burden of proof on an issue, the moving party may discharge its burden by showing that the materials on file demonstrate that the party bearing the burden of proof at trial will not be able to meet its burden.  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and

5

admissions on file," designate specific facts showing there is a genuine issue for trial. Celotex, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences therefrom in the light most favorable to the party opposing the motion. Witter v. Delta Air Lines, Inc., 138 F.3d 1366, 1369 (citations and quotations omitted).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir.1989).

**Discussion**

To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events. Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008), citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53

(2006). After the plaintiff has established the elements of a claim, the employer has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action as an affirmative defense to liability. Goldsmith, 513 F.3d at 1277.

Under Title VII, there are two means by which a person may engage in statutorily protected activity: opposition and participation.

> Under the opposition clause, an employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3 (a). And, under the participation clause, an employer may not retaliate against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." Id.

E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171 (11th Cir. 2000). For purposes of summary judgment, Plaintiff concedes that his actions do not fall under the purview of the participation clause. See DE 10 at 7. Accordingly, the Court will limit its analysis to Plaintiff's allegations that his actions afforded him protection under the opposition clause.

To establish that the plaintiff engaged in statutorily protected expression, the plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1312 (11th Cir. 2002), quoting Little v. United Tech., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997).

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

Little, 103 F.3d at 960. A plaintiff may not stand on his ignorance of the substantive law to argue that his belief was reasonable. Weeks, 291 F.3d at 1317. "If the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." Harper v. Blockbuster Entertainment, Corp., 139 F.3d 1385, 1388 n. 2 (11th Cir.1998).

However, it is important to note that "not every act by an employee in opposition to racial discrimination is protected. The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual." Little, 103 F.3d at 959.

Here, the record supports Plaintiff's allegation that he complained of discrimination, but the issue remains as to whether those complaints constitute "protected activity" under the law. In making that determination, we must ascertain whether Plaintiff's subjective belief that he had been discriminated against was objectively reasonable. Weeks, 291 F.3d at 1311-12.

In Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959-60 (11th Cir. 1997), the Eleventh Circuit, as an issue of first impression in this circuit, concluded that a co-worker's single racially offensive remark was not attributable to the employer. Thus, the court concluded, the plaintiff's opposition to it did not constitute opposition to an unlawful employment practice under Title VII, nor did plaintiff have an objectively reasonable belief that he was opposing an unlawful employment practice. Accordingly, the Eleventh Circuit affirmed the district court's finding that the plaintiff failed to satisfy the first prong of a prima facie case for retaliation.

Similarly, in Butler v. Alabama Dept. of Transp., 536 F.3d 1209 (11th Cir. 2008), an African-American employee brought a retaliation action against her employer, alleging that the employer had retaliated against her for reporting a white co-worker's use of racial epithets. The

Eleventh Circuit reversed the judgment in favor of the plaintiff, and remanded the case for judgment as a matter of law in favor of the employer on the basis that the employee's belief that a white co-worker's racial epithets amounted to an unlawful employment practice by the employer was not objectively reasonable. Id. at 1214. See also Wilson v. Farley, 203 Fed. Appx. 239, 247-48 (11th Cir. 2006) (Co-worker's single derogatory remark that he was tired of plaintiff's "black ass" was insufficient to serve as a basis for a discrimination charge; thus, plaintiff's complaints were not objectively reasonable and the district court did not err in finding that plaintiff failed to satisfy the first prong of a prima facie case for retaliation.)

     In this case, the discriminatory conduct Plaintiff alleged was a single comment made by his co-worker, Jordan Leverich, in which he referred to Plaintiff as a "black monkey." Plaintiff reported the derogatory comment, and it is undisputed that Leverich was "verbally warned." It is also undisputed that after the incident, Plaintiff's supervisor met with the entire crew and told all employees that they must respect each other. Plaintiff was not satisfied with the corrective action taken by Defendant relative to the incident. This fact, however, does not render the Leverich's act the act of the employer. The Court recognizes that Leverich's comment was offensive and that use of racial epithets in general is highly offensive. "But not every uncalled for, ugly, racist statement by a co-worker is an unlawful employment practice." Butler, 536 F.3d at 1213. Leverich's single derogatory remark was insufficient to serve as a basis for a discrimination charge where Leverich was merely Plaintiff's co-worker, rather than his supervisor, and Defendant took corrective action to prevent it from occurring again. Thus, Leverich's conduct could not be attributed to Defendant. Plaintiff, as a matter of law, could not have had an objectively reasonable belief that he was opposing an unlawful employment practice. See

9

Wilson, 203 Fed. Appx. at 247; Little, 103 F.3d at 959-60; Butler, 536 F.3d at 1214.

Accordingly, the Court finds that, as a matter of law, Plaintiff has not established a prima facie case of retaliation and, therefore, summary judgment must be entered in favor of Defendant.

**Conclusion**

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (DE 7) is **GRANTED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of September, 2009.

_____
KENNETH A. MARRA
United States District Court

Copies furnished to:
all counsel of record